Matthew R. Lewis (7919)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
mlewis@kba.law

Adam Gana (admitted *pro hac vice*)
Adam Weinstein (admitted *pro hac vice*)
**GANA WEINSTEIN, LLP**
295 Madison Ave, Suite 705
New York, NY 10017
agana@ganallp.com
aweinstein@ganallp.com

Jonathan Kurta (admitted *pro hac vice*)
Robert Van De Veire (admitted *pro hac vice*)
**KURTA LAW**
295 Madison Ave, Suite 705
New York, NY 10017
Telephone: (212) 658-1502
jkurta@kurtalawfirm.com
rvandeveire@kurtalawfirm.com

*Attorneys for Defendants Jeff Thomsen and Carol Thomsen*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| PURSHE KAPLAN STERLING INVESTMENTS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>JEFF THOMSEN and CAROL THOMSEN,<br><br>Defendants. | **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY AND PERMEANT INJUNCTION**<br><br>Case No. 2:24-cv-00002<br><br>Judge Jill N. Parrish |

## TABLE OF CONTENTS


INTRODUCTION .... 1

FACTUAL BACKGROUND .... 1

STANDARD OF REVIEW .... 4

LEGAL ARGUMENT .... 4

I. The Parties Agreed to Arbitrate Their Dispute Pursuant to FINRA Rule 12200 .... 4

II. Defendants Are Customers of PKS' Associated Person, Mr. Nugent, Entitling Them to Arbitrate Their Claims .... 6

a. Under Rule 12200, A Signed Arbitration Agreement Is Not Required Where a Claim is Brought by The Customer of An Associated Person .... 6

b. FINRA Rules Not Only Contemplate Private Securities Transaction (a/k/a "Selling Away") Cases, But Also Support the Rights of Investors to Bring Them in Arbitration .... 6

c. Courts Uniformly Require Arbitration in Selling Away Cases .... 8

d. Mr. Nugent's Simultaneous Registration with PKS And His Own RIA, FWM, Does Not Alter the Analysis .... 9

e. This Court has Similarly Held that Selling Away Cases are Arbitrable .... 12

f. The Cases Relied Upon by PKS Address Inapposite Factual Circumstances, And for That Reason Are Readily Distinguishable .... 13

g. PKS' Arguments Were Recently Rejected by Another Court In A Nearly Identical Case .... 14

III. Defendants' Dispute Arose in Connection with PKS' Own Business Activities .... 15

a. Members are Required to Supervise the Activities Of Their Associated Persons As Part Of Their Own Business Activities .... 15

b. PKS' "Unrelated Hats" Argument Lacks Supportive Legal Authority And Does Not Change The Firm's Obligation to Supervise Mr. Nugent's RIA "Hat" As Part Of Its Business Activities .... 16

CONCLUSION .... 18

## TABLE OF AUTHORITIES

**Cases**

*AT&T Tech, Inc. v. Communications Workers*,
475 U.S. 643 (1986) ........ 4

*Barzelatto v. Spire Sec., LLC,*
No. 19 CIV. 6238 (CM), 2019 WL 8889865 (S.D.N.Y. Nov. 5, 2019) ........ 10

*Bell v. Cendant Corp.,*
293 F.3d 563 (2d Cir. 2002) ........ 4

*Bensadoun v. Jobe-Riat*,
316 F.3d 171 (2d Cir. 2003) ........ 5

*Cal. Fina Group, Inc. v. Herrin,*
379 F.3d 311 (5th Cir. 2004) ........ 9

*Chelsea Morgan Sec., Inc. v. Rappaport,*
3 F. Supp. 3d 791 (C.D. Cal. 2014) ........ 11

*Citigroup Global Markets, Inc. v. Abbar,*
761 F.3d 268 (2d Cir. 2014) ........ 14

*Daugherty v. Washington Square Securities, Inc.,*
271 F.Supp.2d 681 (W.D.Pa. 2003) ........ 12

*First Montauk Secs. Corp. v. Four Mile Ranch Dev. Co., Inc.,*
65 F.Supp.2d 1371 (S.D.Fla. 1999) ........ 16

*Herbert J. Sims & Co., Inc. v. Roven,*
548 F.Supp.2d 759 (N.D.Cal. 2008) ........ 5

*In O.N. Equity Sales Co. v. Samuels*,
2007 WL 4237013 (M.D. Fla. Nov. 30, 2007) ........ 13

*In re Foresight Wealth Management, LLC, et al,*
Order Instituting Administrative and Cease-and-Desist Proceedings, SEC Rel. No. 11160 (Feb. 27, 2023) ........ 2

*John Hancock Life Ins. Co. v. Wilson,*
254 F.3d 48 (2d Cir. 2001) ........ 8, 15, 16, 17

*Lincoln Fin. Advisors Corp. v. Healthright Partners, LP,*
No. 2:09CV650 DAK, 2010 WL 322141 (D. Utah Jan. 25, 2010) ........ 12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*,
903 F.2d 109 (2d Cir.1990 ........ 5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,*
473 U.S. 626 (1985) ........ 4

*Mony Sec. Corp. v. Bornstein,*
390 F.3d 1340 (11th Cir. 2004) ........ 9, 12, 16

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 4

*Multi-Financial Securities Corp v. King*,
386 F.3d 1364 (11th Cir. 2004) .......... 9, 16

*NDX Advisors, Inc. v. Advisory Fin. Consultants, Inc.*,
No. C 11-3234, 2012 WL 6520689 (N.D. Cal. 2012) .......... 5

*Next Fin. Grp., Inc. v. GMS Mine Repair & Maint., Inc.*,
No. 3:19-CV-168, 2020 WL 924209 (W.D. Pa. Feb. 26, 2020) .......... 12, 17

*O.N. Equity Sales Co. v. Hoegler*,
No. CIV.A.07-2703(FLW), 2008 WL 304924 (D.N.J. Jan. 28, 2008) .......... 12

*O.N. Equity Sales Co. v. Steinke*,
504 F. Supp. 2d 913 (C.D. Cal. 2007) .......... 5

*O.N. Equity Sales Co. v. Wallace*,
2007 U.S. Dist. LEXIS 84945 (S.D. Cal. 2007) .......... 12

*Oppenheimer & Co. v. Neidhardt*,
56 F.3d 352 (2d Cir. 1995) .......... 9

*Orchard Sec., LLC v. Pavel*,
2013 WL 4010228, (D. Utah Aug. 6, 2013) .......... 14

*Purshe Kaplan Sterling Investment, Inc. v. Christopher T. Bennett*,
No. 20-CVS-8639 (N.C. Sup. Court Division) .......... 14

*Ross Sinclaire & Assocs. v. Premier Sr. Living,*
*LLC*, No. 11-CV-5104 YGR, 2012 WL 2501115 (N.D. Cal. June 27, 2012) .......... 5

*Safra Securities, LLC v. Gonzalez*,
No. 1:18-cv-04806-LLS (S.D.N.Y. July 9, 2018) .......... 10

*Shearson/American Express, Inc. v. McMahon*,
482 U.S. 220 (1987) .......... 4

*Sparks v. Saxon Invs., LLC*,
No. 2:09CV151DAK, 2009 WL 2886029 (D. Utah Sept. 3, 2009) .......... 13, 16

*Spear, Leeds & Kellogg v. Cent. Life Assur. Co.*,
85 F.3d 21 (2d Cir. 1996) .......... 5

*Spire Securities, LLC v. FINRA Dispute Resolution, et al*,
Case No. 1:16-cv-09507-VEC (S.D.N.Y. Dec. 13, 2016) .......... 9

*Summit Brokerage Servs., Inc. v. Cooksley*,
No. CA 02–11137 AO, 2002 WL 31478190 (Fla.Cir.Ct. Nov. 1, 2002) .......... 12

The O.N. Equity Sales Co. v. Gibson,
514 F.Supp.2d. 857 (S.D. W.Va. 2007) .......... 12

*The O.N. Equity Sales Co*. v. Pals,
509 F.Supp.2d. 761 (N.D. Iowa 2007) .......... 12

The O.N. Equity Sales Co. v. Rahner,
No. 07–1323, 2007 U.S. Dist. LEXIS 90197, 2007 WL 4258642 (D. Colo. Nov. 30, 2007) .. 12

The O.N. Equity Sales Co. v. Samules,
No. 07–1091, 2007 U.S. Dist. 90332 (M.D. Fla. Nov. 30, 2007) ........................................... 12

The O.N. Equity Sales Co. v. Thiers,
No. 07–305, 2008 U.S. Dist. LEXIS 3765, 2008 WL 110603 (D. Ariz. Jan. 10, 2008) .......... 12

The O.N. Equity Sales Co. v. Venrick,
508 F.Supp.2d 872 (W.D. Wash. 2007) .................................................................... 12

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,*
363 U.S. 574 (1960) ........................................................................................ 4

*Vestax Sec. Corp. v. McWood,*
280 F.3d 1078 (6th Cir. 2002) ..................................................................... 9, 12, 15

*Viyella v. Nicor,*
No. 19-25094-CIV, 2020 WL 977481 (S.D. Fla. Feb. 28, 2020), *appeal dismissed sub nom. Viyella v. Fundacion Nicor,* No. 20-11224-BB, 2020 WL 5755844 (11th Cir. July 14, 2020) 17

*Washington Square Sec., Inc. v. Aune,*
385 F.3d 432 (4th Cir. 2004) ............................................................................ 5

*Washington Square Sec., Inc. v. Sowers,*
218 F. Supp. 2d 1108 (D. Minn. 2002) ....................................................... 11, 15, 17

*Waterford Inv. Servs. v. Bosco,*
682 F.3d 348 (4th Cir. 2012) ............................................................................ 8

*WMA Securities Inc. v. Ruppert,* 80 F.Supp.2d 786 (S.D. Ohio 1999) ...................................... 12

*World Group Securities, Inc. v. Sanders,*
2006 WL 1278738 (D. Utah May 8, 2006) ............................................................. 5

*World Grp. Sec., Inc. v. Sanders,*
No. 2:06-CV-00107 PGC, 2006 WL 1278738 (D. Utah May 8, 2006) ................................... 6

**Statutes**

9 U.S.C. § 2 ..................................................................................................... 5

9 U.S.C. § 4 ............................................................................................... 1, 4, 18

Jeff and Carol Thomsen ("Defendants") respectfully submit this memorandum of points and authorities in opposition to Purshe Kaplan Sterling Investments, Inc.'s ("PKS" or "Plaintiff") motion for a preliminary and permanent injunction (the "Motion") and ask the Court, under 9 U.S.C. § 4, to compel PKS to arbitrate Defendants' claims before FINRA.

## INTRODUCTION

As PKS itself acknowledges, "customers can compel a FINRA member to arbitrate…so long as the 'dispute arises in connection with the business activities of the member ***or the associated person***.'" Mot. for Temp. Restraining Order and Prelim. Inj. [Doc. 4, pg. 6] ("PKS Motion") (emphasis added). Here, the undisputed material facts are that the Thomsens received investment advice and services from PKS' associated person, Adam Nugent, during the time Mr. Nugent was associated with PKS. PKS does not deny that the Thomsens received investment advice from Mr. Nugent leading to investments and investment services. PKS does not deny that Mr. Nugent was an associated person of the firm. These are the only facts necessary to compel arbitration as shown below.

## FACTUAL BACKGROUND

### I. Defendants Are Victims of Investment Scams Perpetrated By Mr. Nugent

Defendants alleged that they are victims of investment scams recommended and perpetrated by Mr. Nugent. FINRA Statement of Claim ("SOC") [Doc. 2] pg. 3. Recently, the SEC issued an order against Mr. Nugent and his registered investment advisory firm ("RIA"), Foresight Wealth Management, LLC ("FWM"), finding that "Foresight and Nugent raised approximately $19.5 million from over eighty investors, many of whom were individual advisory clients of Foresight and Nugent, through offerings of limited partnership interests and promissory notes in the private fund." *In re Foresight Wealth Management, LLC, et al,* Order Instituting

Administrative and Cease-and-Desist Proceedings, SEC Rel. No. 11160 (Feb. 27, 2023) (available at: https://www.sec.gov/enforce/33-11160-s). The SEC found that FWM and Nugent defrauded investors "by misusing fund assets; failing to disclose conflicts of interests; misrepresenting to investors how the proceeds of their investment would be used; and breaching the fund's limited partnership agreement." *Id.*

## II. Mr. Nugent Was an Associated Person of PKS And Under PKS' Supervision

Mr. Nugent was an associated person of PKS from March 22, 2017 through June 21, 2018. PKS Motion, pg. 4. During this same period Mr. Nugent was also simultaneously registered through FWM. *Id.*

In their FINRA claim, Defendants alleged that under FINRA Rules, PKS was obligated to supervise Mr. Nugent's investment activities including his private securities transactions (a/k/a "selling away") that were recommended through FWM. *See* SOC, pg. 3 (*citing* Securities and Exchange Act Section ("Exchange Act") 15(b)(4)(E); NASD Rules 3030 and 3040; FINRA Rules 3110, 3270, and 3280; FINRA Notices to Members 91-32, 94-44, 96-33, and 01-79). PKS was also required to supervise any other outside business activities ("OBAs") of Mr. Nugent. Claims involving the supervision of associated persons pertain to the business activities of member firms.

PKS has a history of failing to supervise private securities transactions and OBAs. *Id.* pg. 3-4. For example, FINRA has sanctioned PKS for failing to properly supervise its advisors OBA. *Id.* (*citing* FINRA AWC No. 2013035788401).

## III. Defendants Were Customers of Mr. Nugent And Purchased Investments Through FWM and at the Recommendation of Mr. Nugent While He Was Registered With PKS

The Thomsens were customers of Mr. Nugent and used his investment services. SOC pg. 8. By virtue of this customer relationship, Mr. Nugent solicited, recommended, and advised

Defendants to invest in various investments including investments that caused the Thomsens losses as alleged in the SOC.

Mr. Nugent recommended that the Thomsens invest in Auto Loan Fund, which they did. On October 25, 2017, while Mr. Nugent was an associated person of PKS, Eric Stats an employee of FWM, sent an email to Mrs. Thomsen copying Mr. Nugent containing a welcome letter for an investment Mr. Nugent recommended in the Auto Loan Fund. Declaration of Jonathan Kurta ("Kurta Dec.") **Exhibit A**. On October 24, 2017, Defendants wrote a check to Auto Loan Fund LLC in the amount of $200,000 upon the advice and recommendation of Adam Nugent to invest in the fund. Kurta Dec. **Exhibit B**. The Thomsens continued to receive regular correspondence from Mr. Nugent and others at FWM concerning their Auto Loan Fund investment. *See* Kurta Dec. **Exhibit C** (November 17, 2017 email containing information on the dividends Defendants were receiving for the Auto Loan Fund investment.).

The Thomsens also invested in Agronomic Capital upon the advice and recommendation of Mr. Nugent. On June 6, 2018, Cass Boren sent an email to Mrs. Thomsen copying Mr. Nugent containing a document with a convertible promissory note for Agronomic Capital, LP. Kurta Dec. **Exhibit D**. The Agronomic Capital investment paperwork was signed by Mr. Nugent as the manager of the investment. *Id.* Also on June 6, 2018, Defendants wrote a check to Agronomic Capital in the amount of $500,000 upon the advice of Mr. Nugent to invest in the fund. Kurta Dec. **Exhibit E**.

In sum, the Thomsens are clearly customers of Mr. Nugent. The Defendants allege that PKS failed to supervise Mr. Nugent's investment recommendations to them. The allegations and documentation are more than sufficient to show that the claims are arbitrable.

## STANDARD OF REVIEW

By passing the Federal Arbitration Act ("FAA"), 9 U.S.C. §4, Congress established a "federal policy favoring arbitration." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (*quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*., 460 U.S. 1 (1983) (internal quotations omitted). This policy has translated into a judicial presumption of arbitrability. *AT&T Tech, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986). Thus, a court may not deny arbitration unless "it may be said with positive assurance" that arbitration is inappropriate. *Id*. at 650. Accordingly, the parties' intentions to arbitrate are "generously construed" as to issues of arbitrability and any ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,*473 U.S. at 626 (1985). In sum, "[d]oubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960); *see also Bell v. Cendant Corp.,* 293 F.3d 563, 566 (2d Cir. 2002).

Defendants can show that an arbitration agreement exists and that the dispute falls within the scope of the agreement.

## LEGAL ARGUMENT

### I. The Parties Agreed to Arbitrate Their Dispute Pursuant to FINRA Rule 12200

Pursuant to the FINRA Code of Arbitration Procedure for Customer Disputes Rule 12200:

> Parties must arbitrate a dispute under the Code if:
>
> • Arbitration under the Code is either:
>
> (1) Required by a written agreement, or
> (2) Requested by the customer;
>
> • The dispute is between a customer and a member or associated person of a member; and

> • The dispute arises in connection with the business activities of the member **or the associated person**, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Rule 12200 (emphasis added).

Courts around the country have held that "[t]he NASD[1] Code constitutes an 'agreement in writing' under the Federal Arbitration Act, 9 U.S.C. § 2, which binds [NASD member firms], as an NASD member, to submit an eligible dispute to arbitration upon a customer's demand." *Washington Square Sec., Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004); *Spear, Leeds & Kellogg v. Cent. Life Assur. Co.*, 85 F.3d 21, 26 (2d Cir. 1996) ("the arbitration rules of a securities exchange are themselves 'contractual in nature.'") (*quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 113 (2d Cir. 1990)); *NDX Advisors, Inc. v. Advisory Fin. Consultants, Inc.,* 2012 U.S. Dist. LEXIS 176977, at *7 (N.D. Cal. 2012) (stating that the FINRA Code of Arbitration constitutes an "agreement in writing" to arbitrate, within the meaning of the FAA); *O.N. Equity Sales Co. v. Steinke,* 504 F. Supp. 2d 913, 916 (C.D. Cal. 2007) ("numerous courts have held that even if 'there is no direct written agreement to arbitrate . . ., the [NASD] Code serves as a sufficient agreement to arbitrate, binding its members to arbitrate a variety of claims with third-party claimants.'") (*citing World Group Securities, Inc. v. Sanders,* 2006 WL 1278738 (D. Utah May 8, 2006) (*quoting MONY Secs. Corp. v. Bornstein,* 390 F.3d 1340, 1342 (11th Cir. 2004))).

---

[1] The National Association of Securities Dealers ("NASD"), is the predecessor of FINRA. "Cases interpreting and applying Rule 10301 apply equally to Rule 12200 since there was no substantive change to the rule." *Ross Sinclaire & Assocs. v. Premier Sr. Living, LLC,* No. 11-CV-5104 YGR, 2012 WL 2501115, at *6 (N.D. Cal. June 27, 2012) (*citing Herbert J. Sims & Co., Inc. v. Roven,* 548 F.Supp.2d 759, 763 n. 2 (N.D.Cal. 2008)).

Plaintiff does not dispute that FINRA Rule 12200 constitutes an 'agreement in writing' for customers to bring disputes before FINRA arbitration.

## II. Defendants Are Customers of PKS' Associated Person, Mr. Nugent, Entitling Them to Arbitrate Their Claims

### a. Under Rule 12200, A Signed Arbitration Agreement Is Not Required Where a Claim is Brought by The Customer of An Associated Person

FINRA Rule 12200 allows "customers" of a member firm's associated persons to arbitrate their claims against the member firm. Rule 12200 (allowing arbitration where "dispute arises in connection with the business activities of the member or the associated person…"). As this Court has previously noted, "the Second, Fourth, Fifth, Sixth and Eleventh Circuits have all held that a customer may compel arbitration with an NASD member firm, even without a signed arbitration agreement, when a 'customer' has a dispute with the firm or its agent that 'relates to the firm's or agent's business activities.'" *World Grp. Sec., Inc. v. Sanders,* No. 2:06-CV-00107 PGC, 2006 WL 1278738, at *6 (D. Utah May 8, 2006).

### b. FINRA Rules Not Only Contemplate Selling Away Cases, But Also Support the Rights of Investors to Bring Them in Arbitration

Many FINRA cases involve a customer dealing with an associated person without the knowledge or involvement of the associated person's member firm. Cases brought against firms for this conduct usually involve "selling away." In such cases, the customer may not have a direct relationship or written agreement with the member firm.

FINRA (formerly the NASD) has specific rules concerning the member firm's supervisory obligations related to selling away, drawing no distinction based upon the existence of a direct relationship between the customer and the firm. For example,

> [FINRA] Rule 3040 prohibits an associated person from selling any security "away" from the member firm unless the firm has authorized the associated person to make the sale. Rule 3040 applies

> to all sales of securities, including promissory notes that are securities. Rule 3040 ensures that, if a firm approves an associated person's participation in a securities transaction, the firm assumes certain critical regulatory responsibilities that go with offering and selling securities to customers. In addition to requiring that the transactions be recorded on the firm's books and records, the firm must exercise appropriate supervision over the associated person in order to prevent violations of the securities laws. As recently stated by the SEC, Rule 3040 "protects investors from the hazards of unmonitored sales and protects the firm from loss and litigation."

Notice to Members 01-79: NASD Reminds Members of Their Responsibilities Regarding Private Securities Transactions Involving Notes and Other Securities and Outside Business Activities (available at: https://www.finra.org/rules-guidance/notices/01-79).

In a series of notices to members, the NASD stated that transactions conducted by an associated person through an RIA, such as FWM, are also private securities transactions that must be supervised by the member firm. For example, in NASD NTM 91–32, the NASD explained that Rule 3040 "should apply to all investment advisory activities conducted by registered representatives other than their activities on behalf of the member that result in the purchase or sale of securities by the associated person's advisory clients." The NASD also released additional guidance for firms to comply with Rule 3040 for their associated persons who are separately registered through an RIA to comply with the supervision and record keeping requirements. *See, e.g,* NTM 94-44 and 96-33.

In short, FINRA imposes obligations on brokerage firms to supervise private securities transactions as part of its ordinary course of business, and FINRA and the courts have repeatedly supported the right of investors to bring selling away cases in its arbitration forum when those obligations are not met. As far back as 1985, the NASD warned brokerage firms that they "may be liable for the actions of the associated person even though the firm was not aware of his or her participation in the transaction." NTM 85-54: Proposed New Rule of Fair Practice Relating to

Private Securities Transactions[2]. When approving FINRA's motion to dismiss rule the SEC noted that:

> FINRA reiterated its position that "selling away" claims are arbitrable under the Codes. Under the Codes, FINRA accepts cases brought by customers against associated persons in selling away cases, **and cases by customers against the associated person's member firm if there is any allegation that the member was or should have been involved in the events, such as an alleged failure to supervise the associated person.**

*See Order Approving Proposed Rule Change,* 74 Fed. Reg. 731, 736 n.37 (Jan. 7, 2009). (emphasis added).

**c. Courts Uniformly Require Arbitration in Selling Away Cases**

Against this backdrop, this District, the Second, Fourth, Fifth, Sixth and Eleventh Circuits and various courts around the country, have all held that the type of selling away case the Thomsens' have filed is arbitrable. These courts have rejected PKS' argument that an investor needs to have a direct relationship with a member firm to compel arbitration. In *John Hancock Life Ins. Co. v. Wilson,* the Second Circuit held "the term 'customer' plainly refers to *either* the member *or* the associated person['s] customer." 254 F.3d 48, 59 (2d Cir. 2001) (emphasis added).

Every circuit that has addressed the issue has found that having a direct transactional, investment, or other relationship with the member firm is not a requirement to compel arbitration against the firm when the investor is a customer of the firm's associated person. *See, e.g., Waterford Inv. Servs. v. Bosco,* 682 F.3d 348, 353 (4th Cir. 2012) ("[A] member must arbitrate the claims of its associated person's customers. The only issue in dispute, therefore, is whether Gilbert was an 'associated person' of Waterford during the events in question such that the Investors—Gilbert's customers—can compel Waterford to arbitrate the dispute."); *Mony Sec. Corp. v.*

[2] Available at: https://www.finra.org/rules-guidance/notices/85-54

*Bornstein,* 390 F.3d 1340, 1344 (11th Cir. 2004) (mandating arbitration between the Borsteins, the investors, and MONY, the broker-dealer firm, where "there is no dispute that the Bornsteins were customers of Keller and that Keller was an associated person with MONY."); *Cal. Fina Group, Inc. v. Herrin,* 379 F.3d 311, 318 (5th Cir. 2004) ("'[C]ustomer' as used in Rule [12200's predecessor] is plainly broad enough to include persons who purchased securities from a registered representative of an NASD–member firm, a.k.a. an 'associated person . . . .'"); *Vestax Sec. Corp. v. McWood,* 280 F.3d 1078, 1081-82 (6th Cir. 2002) (holding that investors were entitled to arbitrate their dispute with the broker-dealer firm even though they never established an account with the firm or purchased securities through it, because the investors purchased securities from stockbrokers associated with the firm); *Multi-Financial Securities Corp v. King*, 386 F.3d 1364, 1366 (11th Cir. 2004) (upholding district court finding that "a customer's direct dealings with an associated person of a[n] NASD member are sufficient to compel a[n] NASD member into arbitration"); *Oppenheimer & Co. v. Neidhardt,* 56 F.3d 352 (2d Cir. 1995) (rejecting Oppenheimer's argument that the investors must have opened accounts with Oppenheimer to be its customers.).

**d. Mr. Nugent's Simultaneous Registration with PKS And His Own RIA, FWM, Does Not Alter the Analysis**

The fact that Mr. Nugent was simultaneously registered with PKS and his own RIA, FWM, does not alter the analysis. As shown above, PKS was obligated to supervise securities sold away through FWM as an associated person of PKS, meaning that these claims remain arbitrable.

A number of courts across the country have addressed this exact issue. For example, in *Spire Securities, LLC v. FINRA Dispute Resolution, et al,* Case No. 1:16-cv-09507-VEC (S.D.N.Y. Dec. 13, 2016) (Kurta Dec., **Exhibit F**)*,* the associated person was registered as a broker with *Spire Securities* and independently with an RIA through which he sold an investment scam. Spire

Securities argued, just as PKS argues, that the associated person was wearing his RIA "hat" when recommending the investment fraud and the firm could not be compelled to arbitrate. *Id.* pg. 19, line 20-23. The court denied *Spire Securities*' motion to preclude arbitration and held that the "The parties do not dispute that Churchville was an associated person of Spire, and that [Defendants] were customers of Churchville." *Id.* pg. 29, line 3-13. Further, the court found that Defendants alleged that "Spire had a duty under FINRA's rules to supervise Churchville's activities, regardless of whether Spire had any connection to [the RIA]." *Id.* pg. 28-9, line 22-2.

The investors in Spire Securities were later awarded $3 million by the arbitration panel that found that the firm failed to supervise their associated persons investment activities. The panel's award was confirmed and upheld by the court. In the motion to vacate the same court found that the firm's CEO and Chief Compliance Officer "attempted to distinguish their duty to supervise [the RIA], Churchville's outside business activity, from Spire's registered investment advisory transactions despite FINRA guidance to the contrary." *Barzelatto v. Spire Sec., LLC,* No. 19 CIV. 6238 (CM), 2019 WL 8889865, at *9 (S.D.N.Y. Nov. 5, 2019). However, the award was upheld because supervisors "expressly acknowledged that she did not implement all of the [supervisory] measures required by FINRA." *Id.* Accordingly, FINRA panels can, and do routinely handle investment fraud disputes perpetrated by associated persons through RIAs just like the matter before this Court.

Similarly, in *Safra Securities, LLC v. Gonzalez,* No. 1:18-cv-04806-LLS (S.D.N.Y. July 9, 2018) the customer did not have an account at the member firm. Kurta Dec., **Exhibit G**. Instead, the customer dealt with Safra Securities' associated person who was also dually employed with both the brokerage firm and a bank. *Id.* at pg. 2, line 5-15. The investor alleged that she never had a relationship with the brokerage firm, never deposited funds at the firm, and never opened an

account with the brokerage firm. *Id.* Yet, the investor alleged that the brokerage firm was nonetheless obligated to supervise the broker's selling away activities conducted at the non-member bank. *Id.*

Judge Louis Stanton found that the investor claims were arbitrable even though the customer had no relationship with the brokerage firm of any kind. *Id.* at pg. 13, line 16-19. Judge Stanton held that whether or not Safra Securities was required to supervise their associated persons activities conducted through the bank was for the arbitrators to determine. *Id.* at pg. 13, line 8-14 ("should the FINRA relationship require the [member firm] to monitor[?]…I don't see why the arbitrators will have any difficulty deciding that question fairly…").

Judge Stanton also rendered the *Citigroup Global Markets, Inc. v. Abbar,* decision cited by PKS at the district court level finding the claim in that matter not arbitrable. 761 F.3d 268 (2d Cir. 2014). Accordingly, PKS would have this Court believe that the same judge who decided *Abbar* failed to apply its holding in his subsequent decision in *Safra Securities*. Instead, Judge Stanton rejected Safra Securities' capacity argument and determined it was up to the arbitrators to decide what duties a member firm had to supervise its associated persons activities conducted through another business or wearing a different hat.

There are dozens more District Court authorities across the country that hold the same.[3] Each of these cases has specifically addressed and rejected the primary argument that Plaintiff

---

[3] *Washington Square Sec., Inc. v. Sowers,* 218 F. Supp. 2d 1108, 1117 (D. Minn. 2002) (finding "no case law in support of its position" that customers are only those investors with accounts at the firm. "When a broker is alleged to have committed fraud and other wrongdoing, it is quite conceivable that monies would be misappropriated or wrongly invested, and would therefore not travel through [the brokerage firm's] regular accounts."); *Chelsea Morgan Sec., Inc. v. Rappaport,* 3 F. Supp. 3d 791, 793 (C.D. Cal. 2014) ("the Rappaports were customers of Duggins who, in turn, was an associated person of Chelsea. The Rappaports have requested arbitration. Arbitration has therefore been requested by a "customer" within the meaning of the rule, and the requirement of subsection one of Rule 12200 is satisfied."); *O.N. Equity Sales Co. v. Wallace,* 2007 U.S. Dist.

presents – that in order to compel arbitration the investor must open an account with PKS or engage in activity directly with the member firm to arbitrate their claims.

**e. This Court has Similarly Held that Selling Away Cases are Arbitrable**

Several selling away cases have also been decided by this Court and in each instance, arbitration was compelled. In *Lincoln Fin. Advisors Corp. v. Healthright Partners, LP,* which this Court called, "a classic 'selling away' case", a Lincoln associated person solicited investments away from the firm without Lincoln's knowledge or involvement. No. 2:09CV650 DAK, 2010 WL 322141, at *3 (D. Utah Jan. 25, 2010).

This Court held "[i]t is well settled that members of FINRA are contractually bound to arbitrate disputes—including disputes with third parties who were not direct customers—through FINRA arbitration." *Id.* at *2. (*citing Bornstein,* 390 F.3d at 1342; *Vestax Sec. Corp.,* 280 F.3d at 1081). This Court ultimately held that cases involving similar facts have found that when an

LEXIS 84945, 11 (S.D. Cal. 2007) (ONESCO must arbitrate the investor's failure to supervise claims arising out of Lancaster's activities while he was an associated person of ONESCO); *Daugherty v. Washington Square Securities, Inc.,* 271 F.Supp.2d 681, 689 (W.D.Pa. 2003) (determining that the plaintiffs were customers within the meaning of Rule 10301(a) because a registered representative of a NASD-member firm sold them financial products); *WMA Securities Inc. v. Ruppert,* 80 F.Supp.2d 786, 789 (S.D. Ohio 1999); *Next Fin. Grp., Inc. v. GMS Mine Repair & Maint., Inc.,* No. 3:19-CV-168, 2020 WL 924209, at *4 (W.D. Pa. Feb. 26, 2020) ("Defendant is a customer of Plaintiff because Defendant purchased investment services from Simanski, an associated person of Plaintiff"); *Summit Brokerage Servs., Inc. v. Cooksley,* No. CA 02–11137 AO, 2002 WL 31478190 (Fla.Cir.Ct. Nov. 1, 2002) ("[B]y dealing with [the firm's] registered representative, [the investor] became a customer of that firm for purposes of NASD arbitration obligations."); *The O.N. Equity Sales Co. v. Pals,* 509 F.Supp.2d. 761, 769 (N.D. Iowa 2007); *The O.N. Equity Sales Co. v. Venrick,* 508 F.Supp.2d 872, 875–76 (W.D. Wash. 2007); *The O.N. Equity Sales Co. v. Thiers,* No. 07–305, 2008 U.S. Dist. LEXIS 3765, at *10–11, 2008 WL 110603 (D. Ariz. Jan. 10, 2008); *The O.N. Equity Sales Co. v. Rahner,* No. 07–1323, 2007 U.S. Dist. LEXIS 90197, at *17–18, 2007 WL 4258642 (D. Colo. Nov. 30, 2007); *The O.N. Equity Sales Co. v. Gibson,* 514 F.Supp.2d. 857, 864 (S.D. W.Va. 2007); *The O.N. Equity Sales Co. v. Samules,* No. 07–1091, 2007 U.S. Dist. 90332, at *15–16 (M.D. Fla. Nov. 30, 2007); *O.N. Equity Sales Co. v. Hoegler,* No. CIV.A.07-2703(FLW), 2008 WL 304924, at *3 (D.N.J. Jan. 28, 2008).

investor deals with a member's agent or representative the customer can compel the firm to arbitrate. *Id.* at *3.

In another selling away case, this Court found that the customer "dealt with Linge, who was an associated member of BancWest. Although Linge acted independently of BancWest in investing the Sparks' money with an 'unrelated company,' the Sparks are still considered a customer of BancWest for purposes of determining the arbitrability of the present claims." *Sparks v. Saxon Invs., LLC,* No. 2:09CV151DAK, 2009 WL 2886029, at *4 (D. Utah Sept. 3, 2009). As the Court noted investors "are customers under the applicable NASD Rules because it is undisputed that they were customers of the [representative], and that [the representative] was an associated person with [the member]." ... [I]t [is] "irrelevant" that the investors invested with an unrelated company and that their only connection to the member was through an intermediary." *Id.* (*quoting In O.N. Equity Sales Co. v. Samuels*, 2007 WL 4237013, at *5 (M.D. Fla. Nov. 30, 2007) (*citing Mony Securities Corp.,* 390 F.3d at 1344–46)).

Here, the parties agree on the controlling facts that compel arbitration. The parties agree that the Thomsens are customers of PKS' associated person Mr. Nugent. Based on the exhibits and SOC there can be no dispute that Mr. Nugent provided investment advice to Defendants who invested in securities sold away from PKS during the time Mr. Nugent was registered with PKS. *See* Kurta Dec., **Exhibits A-E**. Indeed, it does not appear that PKS contests that the "Thomsens describe Nugent's sales of the Agronomic investments to the Thomsens as one of 'his private securities transactions…'" PKS Motion, pg. 4. Accordingly, there appear to be no facts in dispute that would weigh against compelling arbitration.

**f. The Cases Relied Upon by PKS Address Inapposite Factual Circumstances, And for That Reason Are Readily Distinguishable**

PKS fails to provide compelling authority to the contrary. Most of PKS' authorities deal with situations that do not involve an associated person selling investments away from the member firm. These authorities are simply not compelling on the issue before this Court. For example, *Citigroup Global Markets, Inc. v. Abbar,* dealt with the issue of whether the customer was a customer of Citi UK or Citi NY that could compel arbitration. 761 F.3d 268 (2d Cir. 2014). Indeed, *Abbar*, reinforces Defendants arguments that PKS must "arbitrate disputes with its 'customers,' or the 'customers' of its 'associated persons'…" *Id.* at 274. But in *Abbar* there was no associated person for the court to consider. Indeed, as noted above, when faced with analogous circumstances in a subsequent case, *Safra Securities,* Judge Stanton resolved the question of arbitrability in favor of arbitration.

Next, PKS fails to distinguish or even review the holdings in *Healthright Partners,* or *Sparks,* decided by this Court that involve similar "selling away" fact patterns. Instead PKS addresses the irrelevant fact pattern in *Orchard Sec., LLC v. Pavel,* 2013 WL 4010228, at *4 (D. Utah Aug. 6, 2013). In *Orchard Sec., LLC* the investor-defendants did not deal with an associated person of Orchard Securities "rather, they made their purchase through [brokerage firm] Direct Capital at the recommendation of Direct Capital registered representative Joshua Slaybaugh." *Id.* Orchard Securities' only involvement was to serve as an underwriter for the security at issue. *Id.* *Orchard Securities* is unhelpful to the present matter because Defendants did not purchase their investments from an associated person registered with the firm at issue, as is the case here.

**g. PKS' Arguments Were Recently Rejected by Another Court In A Nearly Identical Case**

Finally, PKS has already made these same arguments before another court that rejected PKS' position. In *Purshe Kaplan Sterling Investment, Inc. v. Christopher T. Bennett,* PKS made the same arguments advanced here. No. 20-CVS-8639 (N.C. Sup. Court Division) (Kurta Dec.,

**Exhibit H**). In *Purshe Kaplan,* the firm's associated person was also registered with an independent RIA. PKS argued that the investments made by defendant were made through an OBA separate from PKS. *Id.* pg. 7. In an email, Judge Lisa Bell stated "I am denying Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction. Mr. Monroe, please prepare an order." Kurta Dec., **Exhibit I**. But before the order was drafted PKS agreed to voluntarily dismiss the case. *Id.* Consequently, PKS has already lost an identical case in at least one court.

In sum, FINRA Rule 12200 allows Defendants as "customers" of PKS' associated person, Mr. Nugent, to arbitrate their claims against PKS.

## III. Defendants' Dispute Arose in Connection with PKS' Own Business Activities

### a. Members are Required to Supervise the Activities Of Their Associated Persons As Part Of Their Own Business Activities

FINRA Rule 12200 requires that the "dispute arises in connection with the business activities of the member or the associated person…" Defendants' dispute arises in connection with the business activities of PKS because a firm's lack of supervision over its associated persons necessarily "arises in connection with its business" for the purposes of Rule 12200. *See Vestax Secs. Corp,* 280 F.3d at 1082 ("A dispute that arises from a firm's lack of supervision over its brokers arises in connection with its business."); *John Hancock,* 254 F.3d at 58-59 (stating that "[a] dispute that arises from a firm's lack of supervision over its brokers arises in connection with its business" and that, in the alternative, the dispute is arbitrable because it arises out of the business of the firm's associated person); *Sowers,* 218 F. Supp. 2d at ("Both the Second and Sixth Circuits have found such a claim, when asserted against a brokerage firm alleged to have failed to properly supervise, 'arises in connection with its business.'"); *Prins,* 519 F. Supp. 2d at 1012 ("Regardless of whether ONESCO knew about the Lancorp fund, ONESCO was obliged to supervise Mr.

Lancaster while he was their registered representative" and such "allegations of failed supervision arise in connection with ONESCO's business.") (citations omitted).

Similarly, this Court has found that "members supervise the activities of their associated persons as part of their business activities." *Sparks,* 2009 WL 2886029, at *4 (*citing King,* 386 F.3d at 1370; *John Hancock,* 254 F.3d at 58–59; *MONY Secs. Corp. v. Bornstein,* 250 F.Supp.2d 1352, 1357 (M.D.Fla. 2003); *First Montauk Secs. Corp. v. Four Mile Ranch Dev. Co., Inc.,* 65 F.Supp.2d 1371, 1379 (S.D.Fla. 1999)). Accordingly claims of failing to supervise selling away activity "fall within BancWest's and/or Linge's business activities." *Id.*

Accordingly, the dispute here relates to the business activities of PKS and is therefore arbitrable under Rule 12200.

**b. PKS' "Unrelated Hats" Argument Lacks Supportive Legal Authority And Does Not Change The Firm's Obligation to Supervise Mr. Nugent's RIA "Hat" As Part Of Its Business Activities**

PKS' sole argument against this result is that Mr. Nugent was wearing an "unrelated hat" when selling away from the firm. However, this argument runs contrary to both FINRA Rules and the relevant legal authority.

FINRA Rules make it clear that any "hat" worn must be supervised and approved by the firm. *See* FINRA Rules 3030 and 3040. Capacity arguments, if accepted, completely eviscerate FINRA Rule 12200's language allowing customers of associated persons to bring cases where there is a failure to supervise claim because investments sold away are always made under a different "hat." Accordingly, "hat" or "capacity" arguments are simply the same argument that the member firm was not aware or involved in the transactions at issue repackaged to appear more attractive.

In *Viyella v. Nicor,* the brokerage firm "attempt[ed] to show [associated person] was not acting in his capacity as a Morgan Stanley financial advisor when he suggested [investor] purchase the promissory note…" No. 19-25094-CIV, 2020 WL 977481, at *7 (S.D. Fla. Feb. 28, 2020), *appeal dismissed sub nom. Viyella v. Fundacion Nicor,* No. 20-11224-BB, 2020 WL 5755844 (11th Cir. July 14, 2020). The court held that "Movants do not cite any legal authority to explain why these facts militate against the conclusion [investor's] claims arose in connection with [associated person's] business activities in his capacity as a Morgan Stanley financial advisor." *Id.* The court found that Morgan Stanley asserted its capacity arguments merely to improperly "block[] claimants from initiating FINRA arbitrations on selling away or negligent supervision claims because those claims necessarily involve activity not explicitly sanctioned by the FINRA member." *Id.* at *8; *see also Next Fin. Grp., Inc. v. GMS Mine Repair & Maint., Inc.,* No. 3:19-CV-168, 2020 WL 924209, at *4 (W.D. Pa. Feb. 26, 2020) ("It is not necessary for [associated person] to be acting in his capacity as a representative of Plaintiff when he provided investment advice to Defendant for this dispute to be arbitrable—that is ultimately the merits issue of this dispute."); *John Hancock,* 254 F.3d at 52 (rejecting argument that "[i]nvestors' claims do not fall within the scope of the NASD Code because the promissory notes Fucilo sold to the Investors were in no way related to John Hancock's business."); *Washington Square Sec., Inc. v. Sowers,* 218 F. Supp. 2d 1108, 1111, n. 5 (D. Minn. 2002) (rejecting argument by brokerage firm that "claimed the investors worked with [associated person] in his individual capacity, and not as its representative.").

In sum, FINRA Rule 12200 requires arbitration of disputes that arises in connection with the business activities of the member or the associated person. Defendants' have alleged that that

PKS failed to supervise their associated person's investment related business activities and can compel the firm to arbitrate this dispute.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion for a preliminary and permanent injunction and compel PKS to arbitrate Defendants' claims before FINRA arbitration under 9 U.S.C. § 4.

DATED: February 1, 2024

Respectfully Submitted,

/s/ Matthew R. Lewis__
Matthew R. Lewis (7919)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, 10th Floor
Salt Lake City, Utah 84101
Telephone: (801) 994-4646
mlewis@kba.law

Adam Gana (admitted *pro hac vice*)
Adam Weinstein (admitted *pro hac vice*)
**GANA WEINSTEIN, LLP**
295 Madison Ave, Suite 705
New York, NY 10017
agana@ganallp.com
aweinstein@ganallp.com

Jonathan Kurta (admitted *pro hac vice*)
Robert Van De Veire (admitted *pro hac vice*)
**KURTA LAW**
295 Madison Ave, Suite 705
New York, NY 10017
Telephone: (212) 658-1502
jkurta@kurtalawfirm.com
rvandeveire@kurtalawfirm.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on this 1st day of February, 2024, I caused a true and correct copy of the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY AND PERMEANT INJUNCTION** to be submitted for electronic filing through the Court's CM/ECF system and accordingly served on all parties.

*/s/ Michelle Hansen*
Michelle Hansen